IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WINDSTREAM SERVICES, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> BMG RIGHTS MANAGEMENT (US) LLC ) <br> AND RIGHTSCORP, INC. ) <br> ) <br> Defendants. ) | Case No.: <u>1:16-cv-5015</u> <br><br> DEMAND FOR JURY TRIAL |

**PLAINTIFF WINDSTREAM SERVICES, LLC'S COMPLAINT
FOR DECLARATORY JUDGMENT**

Plaintiff Windstream Services, LLC ("*Windstream*") hereby files this Complaint for Declaratory Judgment ("*Complaint*") against Defendants BMG Rights Management (US) LLC ("*BMG*") and Rightscorp, Inc. ("*Rightscorp*") (collectively, "*Defendants*"), seeking a judgment from this Court declaring that Windstream is not liable to Defendants for direct or indirect copyright infringement, as set forth below.

**PARTIES**

1. Plaintiff Windstream is a Delaware limited liability company with its principal place of business located at 4001 N. Rodney Parham Road, Little Rock, Arkansas 72212.

2. Defendant BMG is a Delaware company with its principal place of business in New York, New York.

3. Defendant Rightscorp and/or its predecessor, DigitalRights, is a Nevada corporation with its principal place of business in Santa Monica, California. Rightscorp and DigitalRights shall collectively be referred to as "Rightscorp." Rightscorp is a proper party to

this action as the information on its website confirms. It is the copyright enforcement company acting on behalf of BMG. The relief sought in this complaint impacts both BMG and Rightscorp.

## JURISDICTION AND VENUE

4. This action is filed pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.* (the "*Declaratory Judgment Act*"), the Copyright Act, 17 U.S.C. §§ 101, *et seq.* (the "*Copyright Act*"), and Federal Rule of Civil Procedure 57.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201(a), as this action arises under the laws of the United States, the Declaratory Judgment Act, and the Copyright Act.

6. This Court has personal jurisdiction over BMG because BMG resides in, and/or has a continuous and systematic business presence in, this Judicial District, including through the maintenance of a principal place of business at 1745 Broadway, New York, New York 10019.

7. This Court has general personal jurisdiction over Rightscorp because Rightscorp has continuous and systematic business activities in New York and this Judicial District. Upon information and belief, Rightscorp's business activities include, among other things, executing business contracts, representation agreements and other deals with various New York based entities who own or otherwise have exclusive licensing rights to copyrighted materials such as those purportedly owned by BMG. Upon information and belief, Rightscorp also conducts various other transactions in New York and relies on a New York based law firm to represent Rightscorp in those transactions. Rightscorp's ongoing business relationship with BMG, whereby Rightscorp and BMG purportedly work jointly to monitor and enforce BMG's copyrights, also gives rise to general jurisdiction over Rightscorp, as Rightscorp has continuous

and systematic contacts and other activities with BMG in order to carry out its business relationship with BMG.

8. This Court has specific personal jurisdiction over Rightscorp due to Rightscorp's continuous and systematic business transactions with BMG. There is an articulable nexus, or a substantial relationship, between Rightscorp's contractual business activities with BMG and the events giving rise to Windstream's claims, as stated herein. In particular, Rightscorp, at BMG's direction, identified and tracked the copyright infringement allegedly occurring over Windstream's network and sent to Windstream the copyright infringement notices about which Windstream complains herein.

9. Venue is proper in this Judicial District under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1400(a) because BMG is a resident of this Judicial District for such purposes. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Windstream's declaratory judgment claims occurred in this Judicial District.

10. This Court has subject matter jurisdiction because an actual case or controversy exists between the parties, as is evidenced by the facts and circumstances described herein.

## FACTUAL ALLEGATIONS

**I.   Overview of Windstream's Internet Services**

11. The Internet is a vast network of linked computers through which information is rapidly sent. People who desire to connect to this network can do so by purchasing an Internet subscription from an Internet Service Provider ("*ISP*").

12. Windstream is one such ISP, providing, among other services, Internet access to residential consumers, small businesses, enterprise organizations and carrier partners across the United States through its network.

13. Currently, Windstream provides Internet access to nearly 1.1 million subscribers nationwide.

14. Windstream subscribers may purchase Windstream's Internet services separately or as a bundle that also includes video programming, voice services, or both.

15. To obtain Windstream's Internet services, Windstream subscribers must pay a flat monthly subscription fee. Windstream does not charge its subscribers on a per-download basis, and it does not charge subscribers based on the volume of data that a subscriber downloads or uploads in a given period of time. Windstream's subscription charges are primarily based upon the speed tier available to or chosen by the subscriber.

16. In addition to paying a monthly subscription fee, Windstream Internet subscribers must acknowledge and agree to Windstream's Acceptable Use Policy and Terms and Conditions before accessing Windstream's Internet services. Taken together, the Acceptable Use Policy and Terms and Conditions reflect Windstream's commitment to honoring and respecting the intellectual property rights of all copyright owners and constitute Windstream's policy for addressing copyright infringers, including repeat infringers, and are reasonably enforced by Windstream.

17. Similar to other ISPs, Windstream only provides Internet connectivity, making it a mere conduit for the transmission of Internet services. As a pipeline to the Internet, Windstream does not monitor or otherwise control the manner in which its subscribers utilize their Windstream Internet connection and does not initiate, control, select or modify the material or content transmitted by Windstream subscribers over Windstream's network. Windstream also lacks any ability to determine which files are stored on its subscribers' private computers and

networks or to determine whether any file-sharing or other programs running on those private computers and networks are being used to conduct copyright infringement.

18.     Windstream plays no role in storing any material or content transmitted over its network.  Rather, any such storage is carried out through an automatic technical process without selection of the material by Windstream.  Moreover, Windstream does not select the recipients of any material or content except as an automatic response to the request of another person.

19.     No copy of any material or content put through the Windstream network in the course of performing any intermediate or transient storage is maintained on Windstream's system or network in a manner ordinarily accessible to anyone other than anticipated recipients, and no such copy is maintained on Windstream's system or network in a manner ordinarily accessible to such anticipated recipients for a longer period than is reasonably necessary for the transmission, routing, or provision of connections.

20.     The Internet access Windstream provides subscribers is to be used for legitimate, substantial non-infringing uses, and Windstream subscribers engage in substantial non-infringing uses with such access.  These non-infringing uses include, among other things, conducting business transactions, shopping, checking e-mail, reading the news and other information sources, engaging on social media, scheduling doctors' appointments, booking airline flights and dinner reservations, communicating with friends and family, and legally accessing music, videos, and books.

21.     The significance of these uses cannot be underestimated.  As early as 1997, the United States Supreme Court acknowledged the Internet's role in furthering the fundamental values of democracy, including the value of free speech.  As explained by the Court:

> [The Internet] provides relatively unlimited, low-cost capacity for communication of all kinds. . . . This dynamic, multifaceted

> category of communication includes not only traditional print and news services, but also audio, video, and still images, as well as interactive, real-time dialogue. Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox. Through the use of Web pages, mail exploders, and newsgroups, the same individual can become a pamphleteer. As the District Court found, "the content on the Internet is as diverse as human thought."

*Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870 (1997) (concluding that online speech qualifies for the same level of First Amendment protection as other forms of speech).

22. Since *Reno*, Internet usage has grown at an exponential rate, becoming an even more integral part of Americans' everyday lives.

## II. BMG Employs Rightscorp to Police Alleged Copyright Infringement

23. Upon information and belief, BMG owns, administers, and licenses copyrights in musical compositions.

24. Upon information and belief based on Rightscorp's website, BMG has a contractual business relationship with Rightscorp, whereby Rightscorp acts as BMG's agent to identify alleged infringing uses of BMG's copyrighted work.

25. Upon information and belief, Rightscorp, on BMG's behalf, detects and documents potential infringements of BMG's copyrights by using certain technology to monitor BitTorrent peer-to-peer ("*P2P*") file-sharing systems.

26. BitTorrent is a communications protocol for P2P file sharing that allows users to join a "swarm" of hosts to upload or download content from one another simultaneously. When a file is requested, BitTorrent software identifies multiple host computers with the identical file, simultaneously downloads small pieces of the requested file from each of those computers, and then reassembles the pieces into one file on the requesting computer.

27. Upon information and belief, Rightscorp's monitoring system searches BitTorrent systems and extracts information attempting to identify alleged infringers of BMG's copyrights.

28. By relying on the information gathered through its monitoring activities, Rightscorp, at the direction of BMG, generates so called copyright infringement notification letters that purport to describe infringement of BMG's copyrights carried out by subscribers of particular ISPs.

### III. Defendants Send Windstream Notices of Alleged Copyright Infringement

29. Since at least 2011, BMG, through Rightscorp, has sent Windstream notices purporting to describe instances of alleged infringement of BMG's copyrights committed by Windstream's subscribers (the "*Notices*"). According to the Notices, BMG owns or otherwise has exclusive rights to the copyrights for the musical compositions identified in the Notices.

30. The Notices demand that Windstream take action against Windstream subscribers who allegedly infringed upon BMG's copyrights and claim, among other things, that Windstream is liable for contributory and vicarious copyright infringement. The Notices are typically e-mailed to Windstream in plain text and lack any predetermined structure that would allow them to be processed automatically, requiring them to be manually processed by Windstream personnel.

31. The Notices lack sufficient details to show the occurrence of actual copyright infringement and the specific identity of the person(s) accused of infringing BMG's copyrights, making it impossible for Windstream to know whether any of its subscribers have actually infringed upon BMG's copyrights using Windstream's network.

32. In addition to the Notices, Defendants have recently accused Windstream of allowing repeat copyright infringers to use Windstream's network to infringe upon BMG's copyrights. Defendants claim that Windstream's knowledge and allowance of unchecked

infringement on its network makes Windstream liable for secondary copyright infringement and actual or statutory damages as high as $150,000 per infringed work. Defendants also contend that Windstream is required to comply with Defendants' Notices and that Windstream, by virtue of the Notices, has actual knowledge of the alleged copyright infringement occurring over Windstream's network.

33. Although Windstream denies any wrongdoing, it agreed to discuss the above allegations with Defendants. Despite the parties' discussions, a resolution has not been reached.

34. By its earlier actions and by claiming that Windstream is liable for the infringement of BMG's copyrights, Defendants threaten Windstream. This threat causes a substantial, immediate and real controversy to exist between Windstream and Defendants, making court intervention necessary.

35. Windstream denies that it is liable—either directly or indirectly—for any alleged infringement of BMG's copyrights, as Windstream has acted in accordance with the Copyright Act, including those laws, doctrines and provisions prohibiting direct, contributory or vicarious infringement.

36. Defendants have no direct evidence that any Windstream subscriber engaged in direct copyright infringement and Windstream, as a mere conduit for the transmission of Internet services, cannot be held liable for direct copyright infringement.

37. Also, as a mere conduit for the transmission of Internet services, Windstream cannot be liable for contributory infringement, vicarious infringement, and/or inducement of copyright infringement.

38. Windstream does not have knowledge of any of the alleged infringements committed by its subscribers or by third parties with legitimate access to its subscribers' Internet

connections. As a mere conduit for the transmission of Internet services, Windstream also lacks information about the contents and operations of its subscribers' private computers or networks and has no knowledge regarding any infringing material that could exist on its subscribers' private computers or networks. Windstream also does not have knowledge that any of its subscribers are running software that would make copyrighted works available for illegal download by others. Moreover, the Notices sent by Defendants do not provide Windstream with facts sufficient to create actual knowledge of specific instances of copyright infringement.

39. Due to its lack of awareness or control over its subscribers' private computers and networks, Windstream lacks the ability to exert control over any copyrighted materials that are stored on, or shared through, its subscribers' private computers or networks. For similar reasons, Windstream lacks the ability to distinguish between the legitimate, substantial non-infringing uses of its Internet services and other, potentially illegitimate uses. As a result, Windstream lacks the ability to curtail alleged illegitimate uses without also adversely affecting the legitimate and non-infringing uses provided by Windstream's Internet services.

40. Further, Windstream does not authorize, direct or encourage its subscribers to engage in copyright infringement and it does not take affirmative steps to foster infringement by its subscribers. Windstream also does not profit from subscriber infringement.

41. Windstream also asserts that as a mere conduit for the transmission of Internet services, it qualifies for the safe harbor provision under 17 U.S.C. § 512(a) and is, therefore, not subject to the take-down notice provisions of the Digital Millennium Copyright Act ("*DMCA*"), including any Notices issued by Defendants. To the extent Windstream is subject to the take-down provisions of the DMCA, Windstream asserts that Defendants' Notices do not comport with the DMCA's express statutory requirements for such notices.

## **COUNT I.  DECLARATORY JUDGMENT**
(*Non-Infringement of Copyright*)

42. Windstream reiterates and re-alleges the allegations contained in paragraphs 1 - 41, as if fully set forth herein.

43. The Declaratory Judgment Act provides in relevant part:

> In a case of an actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).  A "case of an actual controversy" is "definite and concrete, touching the legal relations of parties having adverse legal interests." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011), aff'd, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013).  Also, there must be "a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

44. As set forth above, and as a result of the facts leading up to the filing of this suit, including the recent allegations asserted by Defendants, such a "concrete" and "substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" exists between Windstream and Defendants regarding whether Windstream is liable for infringing BMG's copyrights.  The substantial disagreement among the parties cannot be resolved without court intervention.  As such, Windstream has filed this Complaint.

45. Accordingly, Windstream seeks the following declarations from this Court, requesting the Court to determine the rights and obligations of Windstream and Defendants under the Copyright Act, specifically declarations that:

  (a) Windstream, as a mere conduit for the transmission of Internet services, is not directly liable under the Copyright Act for any alleged infringement of BMG's copyrights;

(b) Windstream, as a mere conduit for the transmission of Internet services, is not liable for contributory infringement of any of BMG's copyrights;

(c) Windstream, as a mere conduit for the transmission of Internet services, is not liable for vicarious infringement of any of BMG's copyrights;

(d) Windstream, as a mere conduit for the transmission of Internet services, is not liable for inducing infringement of any of BMG's copyrights;

(e) Windstream, as a mere conduit for the transmission of Internet services, qualifies for the safe harbor provision under 17 U.S.C. § 512(a) and is, therefore, not subject to the take-down notice provisions of the DMCA, including any Notices issued by Defendants;

(f) Windstream has not been and is not required to comply with or otherwise respond to Defendants' Notices;

(g) Even if Windstream were subject to the DMCA's take-down notice provisions, Defendants' Notices fail to comply with the DMCA's express statutory requirements for take-down notices as set forth in 17 U.S.C. § 512(c)(3) and are therefore insufficient to impose any legal duty on Windstream;

(h) Defendants' Notices do not provide Windstream with actual knowledge of any copyright infringement of BMG's copyrights by Windstream's subscribers;

(i) Windstream has never had actual knowledge of any copyright infringement of BMG's copyrights by Windstream's subscribers;

(j) Windstream has not acted willfully in violation of any provision of the Copyright Act or other laws; and

(k) BMG is not entitled to any compensation or damages from Windstream for any alleged infringement of BMG's copyrights.

## COUNT II.  DECLARATORY JUDGMENT
(**Statute of Limitations**)

46. Windstream reiterates and re-alleges the allegations contained in paragraphs 1 - 45, as if fully set forth herein.

47. Under the Copyright Act, the statute of limitations on a claim for copyright infringement is *three years* from the date the claim accrued.  *See* 17 U.S.C. § 507(b).

48. As set forth above, Defendants started sending its Notices to Windstream as early as 2011. Such Notices indicate BMG's knowledge of alleged copyright infringement by Windstream or Windstream's subscribers as early as 2011.

49. Accordingly, any alleged copyright infringement claims asserted in the Notices sent to Windstream prior to the commencement of this lawsuit that are beyond the permitted three-year limitations period are time-barred as a matter of law.

50. Accordingly, Windstream seeks a declaration from the Court that any alleged copyright infringement claims asserted in the Notices sent to Windstream prior to the commencement of this lawsuit that are beyond the permitted three-year limitations period are time-barred as a matter of law.

## JURY TRIAL DEMANDED

51. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Windstream hereby requests a jury trial on all issues so triable.

## PRAYER FOR RELIEF

For these reasons, Defendant Windstream Services, LLC prays that the Court:

(a) Enter judgment in Windstream's favor and against Defendants on all counts raised herein;

(b) Declare that Windstream, as a mere conduit for the transmission of Internet services, is not directly liable under the Copyright Act for any alleged infringement of BMG's copyrights;

(c) Declare that Windstream, as a mere conduit for the transmission of Internet services, is not liable for contributory infringement of any of BMG's copyrights;

(d) Declare that Windstream, as a mere conduit for the transmission of Internet services, is not liable for vicarious infringement of any of BMG's copyrights;

(e)      Declare that Windstream, as a mere conduit for the transmission of Internet services, is not liable for inducing infringement of any of BMG's copyrights;

(f)      Declare that Windstream, as a mere conduit for the transmission of Internet services, qualifies for the safe harbor provision under 17 U.S.C. § 512(a) and is, therefore, not subject to the take-down notice provisions of the DMCA, including any Notices issued by Defendants;

(g)      Declare that Windstream has not been and is not required to comply with or otherwise respond to Defendants' Notices;

(h)      Declare that to the extent Windstream is subject to the DMCA's take-down notice provisions, Defendants' Notices fail to comply with the DMCA's express statutory requirements for take-down notices as set forth in 17 U.S.C. § 512(c)(3) and are therefore insufficient to impose any legal duty on Windstream;

(i)      Declare that Defendants' Notices do not provide Windstream with actual knowledge of any copyright infringement of BMG's copyrights by Windstream's subscribers;

(j)      Declare that Windstream has never had actual knowledge of any copyright infringement of BMG's copyrights by Windstream's subscribers;

(k)      Declare that Windstream has not acted willfully in violation of any provision of the Copyright Act or other laws;

(l)      Declare that Defendants are not entitled to any compensation or damages from Windstream for any alleged infringement of BMG's copyrights;

(m)      Declare that any alleged copyright infringement claims asserted in Defendants' Notices sent to Windstream prior to the commencement of this lawsuit that are beyond the permitted three-year limitations period are time-barred as a matter of law;

(n)      Award Windstream its attorneys' fees and costs of suit herein incurred;

(o)      Award Windstream all prejudgment and postjudgment interest allowed by law; and

(p)      Grant Windstream such other and further relief as the Court deems just and proper, at law or in equity.

Dated:  June 27, 2016

          Respectfully submitted,

          **NORTON ROSE FULBRIGHT US LLP**

          **By:** *s/ Judith S. Archer*
              Richard S. Krumholz
              RK-1044
              richard.krumholz@nortonrosefulbright.com
              Brett C. Govett
              Texas State Bar No.  08235900
              brett.govett@nortonrosefulbright.com
              *\*\*Pro Hac Vice Application to be Filed*
              Stephen L. Myers
              Texas State Bar No.  24079037
              stephen.myers@nortonrosefulbright.com
              *\*\*Pro Hac Vice Application to be Filed*
          **NORTON ROSE FULBRIGHT US LLP**
          2200 Ross Avenue, Suite 3600
          Dallas, TX  75201-2784
          Telephone:  (214) 855-8000
          Facsimile:   (214) 855-8200

              Judith A. Archer
              JA-4446
              judith.archer@nortonrosefulbright.com
          **NORTON ROSE FULBRIGHT US LLP**
          666 Fifth Avenue
          New York, NY  10103-3198
          Telephone:  (212) 318-3000
          Facsimile:   (212) 318-3400

          **COUNSEL FOR PLAINTIFF WINDSTREAM SERVICES, LLC**