Michael J. Allan
202 429 6749
mallan@steptoe.com



1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com

August 29, 2016

Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, NY  10007

      Re:    ***Windstream Services, LLC v.***
              ***BMG Rights Management (US) LLC and Rightscorp, Inc.***
              <u>**Case No. 1:16-cv-5015**</u>

Dear Judge Torres:

      This Firm represents BMG Rights Management (US) LLC ("BMG") in the above lawsuit filed by Windstream Services, LLC ("Windstream").  In accordance with Part III of the Court's Individual Practices in Civil Cases, I write to request a pre-motion conference regarding BMG's motion to dismiss Windstream's declaratory judgment complaint.  The Parties have exchanged letters as required by the Court's Individual Practices.

      BMG owns, administers, licenses, and otherwise exploits copyrights in musical compositions.  In recent years, an online file-sharing protocol known as BitTorrent has become the major channel for theft of copyrighted music and film.  BitTorrent allows internet users to share infringing files directly between their computers without the need for a middleman or centralized database.  Those users are direct infringers of the copyrights in the content they share.  *See generally BMG Rights Management (US) LLC v. Cox Communications*, 149 F. Supp. 3d 634 (E.D. Va. 2015).

      The Digital Millennium Copyright Act contemplates that copyright holders will notify ISPs of infringement by their subscribers.  *See* 17 U.S.C. § 512.  Windstream's own website (like that of other ISPs) directs copyright owners to send infringement notices to a dedicated electronic mailbox, abuse@windstream.net.  See https://www.windstream.com/About-Us/Acceptable-Use-Policy/.  Due to the enormous volume of online infringement, copyright holders and their agents send millions of infringement notices to ISPs such as Windstream.



Honorable Analisa Torres
August 29, 2016
Page 2

BMG retained Rightscorp, which sends notices to many ISPs on behalf of a host of copyright holders, to monitor its copyrights online and notify ISPs of infringement.

 Windstream contacted BMG's agent Rightscorp regarding the notices of infringement on its network. Counsel for BMG then followed up with Windstream, and the Parties had one telephonic discussion. Windstream invited BMG to provide it with a written proposal, which BMG provided. Windstream then filed suit without further discussion.

 Windstream's complaint should be dismissed because it fails to set forth any "actual controversy" over which this Court has jurisdiction under Article III and the Declaratory Judgment Act, 28 U.S.C. § 2201. To qualify as an "actual controversy," the dispute giving rise to a claim for declaratory relief must be "definite and concrete, touching the legal relations of parties having adverse legal interests" and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune v. Genentech*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Insurance Co. of Hartford v. Haworth*, 300 U.S. 227, 240–41 (1937)). "This requirement circumscribes federal jurisdiction to real conflicts so as to preclude the courts from gratuitously rendering advisory opinions with regard to events in dispute that have not matured to a point sufficiently concrete to demand immediate adjudication and thus that may never materialize as actual controversies." *Dow Jones & Co. v. Harrods*, 237 F. Supp. 2d 394, 406 (S.D.N.Y. 2002).

 Windstream's complaint fails to meet that standard. It does not refer to any specific copyright, any particular acts of infringement, or any practices in which it engages to comply with the Copyright Act or the DMCA. Instead, Windstream seeks a vague, far-reaching ruling, divorced from specific facts, that it is not liable for contributory or vicarious copyright infringement. Courts have refused to exercise jurisdiction over such abstract claims for declaratory relief. See, e.g., *Veoh Networks v. UMG Recordings*, 522 F. Supp. 2d 1265, 1269–70 (S.D. Cal. 2007) ("Succinctly, the Court cannot determine whether a safe harbor for copyright infringement exists without knowing which rights are at stake. Rather than 'specific relief through a decree of conclusive character,' Plaintiff seeks a blanket validation of the ongoing legality of their business model.").

 According to its response to BMG's August 18 letter, Windstream seeks a declaration that it is not liable for both past and future infringement of BMG's works. Neither is the proper subject of a declaratory judgment complaint. Declaratory judgments are not the proper vehicle to resolve questions of liability for past torts. "[W]here the purported use of the DJA seeks a declaration of non-liability to preemptively defeat actions grounded on tort claims involving rights already accrued by reason of alleged wrongful conduct, various courts have held that that application is not a warranted purpose of the DJA." *Dow Jones & Co. v. Harrods*, 237 F. Supp. 2d 394 (S.D.N.Y. 2002); *see also National Union Fire Insurance. Co. v. International Wire*



Honorable Analisa Torres
August 29, 2016
Page 3

*Group*, 02-cv-10338 (SAS), 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003) ("[The Act] is intended to operate prospectively.").

Nor is this an appropriate case in which to issue a declaratory judgment with prospective effect. Whether Windstream is liable for future infringement depends on facts unknowable in advance: the future infringing conduct of its subscribers and future conduct of its own that may or may not constitute a contribution to its subscribers' infringement. While Windstream may desire to immunize itself against liability for future infringement, there is no factual record on which to assess that liability. A Court cannot offer a declaratory judgment immunizing purely hypothetical future conduct from secondary liability for copyright infringement. *See Mears v. Montgomery*, No. 02 Civ. 407 (MHD), 2013 WL 09221 (S.D.N.Y. Jan. 4, 2013) ("Accordingly, for a declaratory judgment to issue, there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'").

This suit is also unripe because there was no immediate prospect of litigation before Windstream filed its complaint. BMG did not initiate communication with Windstream; Windstream initiated communication with BMG's agent. BMG's pre-suit correspondence was aimed at understanding the facts and trying to resolve any dispute without litigation. Windstream short-circuited discussions by filing a pre-emptive declaratory judgment action. *See Nike v. Already*, 663 F.3d 89, 95–96 (2d Cir. 2011) (explaining that whether a party reasonably anticipates litigation is a relevant factor in determining whether there is an actual controversy between the parties).

Apart from the jurisdictional merits, this Court should exercise its discretion under the Declaratory Judgment Act not to hear this dispute. *Dow Jones & Co. v. Harrods*, 346 F.3d 357, 359–60 (2d Cir. 2003) ("th[e] permissive language [of the Declaratory Judgment Act] is a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear" and setting forth factors to guide that discretion).

As described above, seeking rulings aimed at past conduct undermines the "fundamental purpose" of the Declaratory Judgment Act, which is to "avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has occurred." *United States v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986); *see also National Union Fire Insurance Co. v. International Wire Group*, 02-cv-10338 (SAS), 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003) ("[The Act] is intended to operate prospectively. There is no basis for declaratory relief when only past acts are involved."). Conversely, it would be highly improper to force BMG to litigate the propriety of future Windstream conduct and to determine whether facts that have not occurred amount to secondary copyright infringement.



Honorable Analisa Torres
August 29, 2016
Page 4

      The Court should also consider whether Windstream brought this action as "procedural fencing." *Dow Jones*, 663 F.3d at 95–96 (explaining that whether an action appears to be "procedural fencing" weighs against exercising jurisdiction). Windstream's generalized allegations and the timing of its decision to file the complaint strongly suggest that Windstream filed this action to secure strategic advantages in any dispute with BMG. *See Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 586 (S.D.N.Y. 1990) ("[T]he misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action."). Before this action was filed, counsel for the Parties were engaged in good faith discussions. Rather than continue those discussions and with no warning to BMG, Windstream unilaterally filed suit.

      Windstream's bare-bones allegations also reveal that it is more concerned with anticipating defenses to liability than seeking a ruling that will clarify and guide the parties' conduct going forward. *See Dow Jones*, 346 F.3d at 359 (explaining that a court may decline to exercise discretion where, among other factors, the relief sought would not "finalize the controversy and offer relief from uncertainty"); *John Wiley & Sons v. Visuals Unlimited*, No. 11-CV- 5453-CM, 2011 WL 5245192, at *5 (S.D.N.Y. Nov. 2, 2011) (citing *Hanes Corp. v. Millard*, 531 F.2d 585, 592–93 (D.C. Cir. 1976) ("The anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure. It deprives the plaintiff of his traditional source of forum and timing, and it provokes a disorderly race to the courthouse."), superseded by statute on other grounds as recognized in *Nat'l R.R. Passenger Corp. v. Consol. R. Corp.*, 892 F.2d 1066, 1071–72 (D.C. Cir. 1990)).

      Windstream's conclusory allegations that BMG's notices do not give rise to knowledge of infringement and that it has not materially contributed to infringement short-circuit the fact-intensive analysis that underlies any claim for contributory or vicarious infringement and that is not the proper subject of a declaratory judgment action. Windstream does not provide any of the detailed "factual matter" regarding its handling of infringement notices or its treatment of repeat infringers that might give "plausible grounds to infer" that it is not liable. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).

      In its response to BMG's initial letter, Windstream asserted that, as a "conduit" internet service provider offering only access to the internet, it has blanket immunity from liability for copyright infringement – regardless of its conduct – under Section 512(a) of the Digital Millennium Copyright Act. Windstream wrote that "as a mere conduit for the transmission of Internet services, it is the type of Internet Service Provider ("ISP") covered by section 512(a) of the Digital Millennium Copyright Act ("DMCA") and, as a result, cannot be liable for direct or indirect copyright infringement" regardless of its policies and practices.

      To the extent that this is the gravamen of Windstream's complaint, it is fundamentally flawed as a matter of law and should be dismissed under Rule 12(b)(6). In the DMCA, Congress



Honorable Analisa Torres
August 29, 2016
Page 5

gave conduit internet service providers not blanket immunity but a "safe harbor" defense to secondary copyright liability under certain conditions.  For conduit internet service providers, the principal requirement is that they adopt and reasonably implement a policy for the termination of repeat infringers in appropriate circumstances.  *See* 17 U.S.C. § 512(a), (i); *BMG*, 149 F. Supp. 3d at 653-62.

Long-standing doctrines of "secondary" liability – legislating against the background of which, Congress gave conduit service providers a limited defense in the DMCA – make a service provider such as Windstream liable for that infringement if it "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct" (contributory infringement) or if it "has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities" (vicarious liability).  *Gershwin Publishing v. Columbia Artists Management*, 443 F.2d 1159, 1162 (2d Cir. 1971); *see also MGM v. Grokster*, 545 U.S. 913, 930 (2005) (endorsing *Gershwin's* "doctrines of secondary liability" as "well established in the law" and applying them in the online context); *BMG*, 149 F. Supp. 3d at 670-71 (holding that conduit ISPs may be contributorily or vicariously liable for their subscribers' infringement).

In sum, Windstream seeks a broad ruling that it does not infringe unspecified BMG copyrights at any time or anywhere, regardless of the factual circumstances or its actual knowledge of copyright infringement by Windstream subscribers.  That is not the proper subject of a declaratory judgment action and does not state a legally valid claim under the DMCA or the Copyright Act.

                Respectfully submitted,

                Michael J. Allan