**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| WINDSTREAM SERVICES, LLC, |
| Plaintiff, |
| – against – |
| BMG RIGHTS MANAGEMENT (US) LLC and RIGHTSCORP, INC., |
| Defendants. |

Civil Action No. 16-cv-5015-AT-RLE

<u>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**</u>

STEPTOE & JOHNSON LLP

1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 506-3900

1330 Connecticut Avenue, N.W.
Washington, DC 20036
Tel: (202) 429-3000

*Counsel for Defendants*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

ARGUMENT ......................................................................................................................5

    I.     THE LAW GOVERNING CONDUIT ISP LIABILITY FOR SECONDARY
        COPYRIGHT INFRINGEMENT.............................................................................5

    II.    WINDSTREAM FAILS TO ESTABLISH AN "ACTUAL
        CONTROVERSY" THAT WOULD GIVE THIS COURT JURISDICTION
        OVER ITS DECLARATORY JUDGMENT COMPLAINT .................................7

        A.    Legal Standard ...........................................................................................7

        B.    Windstream's Complaint Does Not Present an Actual Controversy ...........8

    III.   THE COURT SHOULD EXERCISE ITS DISCRETION NOT TO HEAR
        WINDSTREAM'S DECLARATORY JUDGMENT COMPLAINT ..................14

    IV.   WINDSTREAM'S COMPLAINT FAILS TO STATE A CLAIM......................17

        A.    Legal Standard .........................................................................................17

        B.    Windstream Fails to State Claims of Non-Infringement of BMG's
            Copyrights and Entitlement to the DMCA Safe Harbor............................18

    V.    RIGHTSCORP SHOULD BE DISMISSED ........................................................21

CONCLUSION..................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ........................................................................19, 20

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937)..........................................................................................7

*Applera Corp. v. Mich. Diagnostics, LLC*,
   594 F. Supp. 2d 150 (D. Mass. 2009) .................................................................9

*Arbitron, Inc. v. Kiefl*,
   No. 09-cv-04013 PAC, 2010 WL 3239414 (S.D.N.Y. Aug. 13, 2010)...................21

*Arista Records LLC v. Lime Grp. LLC*,
   784 F. Supp. 2d 398 (S.D.N.Y. 2011)..........................................................19, 21

*Arista Records LLC v. Usenet.com, Inc.*,
   633 F. Supp. 2d 124 (S.D.N.Y. 2009).................................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................17

*BASF Corp. v. Symington*,
   50 F.3d 555 (8th Cir. 1995) ...............................................................................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................17, 20

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
   149 F. Supp. 3d 634, 639 (E.D. Va. 2015) .............................3, 7, 10, 11, 18, 19, 20

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
   Civil Action No. 1:14-cv-1611, 2016 WL 4224964 (E.D. Va. Aug. 8, 2016) ..........3, 7, 18, 19

*Broadcom Corp. v. Qualcomm Inc.*,
   No. 08-cv-1829 WQH (LSP), 2009 WL 684835 (S.D. Cal. Mar. 12, 2009)...........10

*Bruce Winston Gem Corp. v. Harry Winston, Inc.*,
   No. 09 Civ. 7352 (JGK), 2010 WL 3629592 (S.D.N.Y. Sept. 16, 2010) ..........11, 15

*Capitol Records, LLC v Escape Media Grp., Inc.*,
   No. 12-CV-6646 (AJN), 2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015).................19

*Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.*,
    90 F.3d 671 (2d Cir. 1996)................................................................................8

*Columbia Pictures Indus., Inc. v. Fung*,
    710 F.3d 1020 (9th Cir. 2013) ...........................................................................3

*Cunningham Brothers, Inc. v. Bail*,
    407 F.2d 1165 (7th Cir. 1969) .........................................................................16

*Dow Jones & Co. v. Harrods*,
    346 F.3d 357 (2d Cir. 2003)........................................................................14, 16

*Dow Jones & Co. v. Harrods, Ltd.*,
    237 F. Supp. 2d 394 (S.D.N.Y. 2002), *aff'd* 346 F.3d 357 (2d Cir. 2003) ...................8, 13, 16

*Effie Film, LLC v. Murphy*,
    932 F. Supp. 2d 538 (S.D.N.Y. 2013)...............................................................13

*Farmaceutisk Laboratorium Ferring A/S v. Solvay Pharms.*,
    No. 1:89-CV-1972-JOF, 1992 WL 421542 (N.D. Ga. Sept. 9, 1992)....................................11

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt. Inc.*,
    443 F.2d 1159 (2d Cir. 1971)........................................................................6, 18

*Great Am. Ins. Co. v. Houston Gen. Ins. Co.*,
    735 F. Supp. 581 (S.D.N.Y. 1990)....................................................................16

*In re Aimster Copyright Litig.*,
    334 F.3d 643 (7th Cir. 2003) .............................................................................6

*Klinger v. Conan Doyle Estate, Ltd.*,
    988 F. Supp. 2d 879 (N.D. Ill. 2013) ...............................................................13

*Luckett v. Bure*,
    290 F.3d 493 (2d Cir. 2002)...............................................................................8

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)...............................................................................8

*Mears v. Montgomery*,
    No. 02 Civ. 407 (MHD), 2013 WL 69221 (S.D.N.Y. Jan. 4, 2013)........................................12

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)...............................................................................8, 12, 13

*MGM Studios Inc. v. Grokster*,
    545 U.S. 913 (2005)........................................................................................6, 18

*Microchip Tech. Inc. v. Chamberlain Grp., Inc.*,
  441 F.3d 936 (Fed. Cir. 2006)................................................................21

*Nat'l Union Fire Ins. Co. v. Int'l Wire Grp., Inc.*,
  02-cv-10338 (SAS), 2003 WL 21277114 (S.D.N.Y. June 2, 2003).................................13, 16

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013)................................................................17

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ................................................................10

*Rolex Watch U.S.A. Inc. v. PRL USA Holdings, Inc.*,
  No. 12 Civ. 6006, 2015 WL 1909837 (S.D.N.Y. Apr. 27, 2015)...........................................15

*Telebrands Corp. v. Exceptional Prods. Inc.*,
  No. 11-cv-2252, 2011 WL 6029402 (D.N.J. Dec. 5, 2011)....................................14

*Texas v. United States*,
  523 U.S. 296 (1998)................................................................11

*Thomas v. Union Carbide Agric. Prods. Co.*,
  473 U.S. 568 (1985)................................................................11

*United States v. Doherty*,
  786 F.2d 491 (2d Cir. 1986)................................................................15

*Veoh Networks, Inc. v. UMG Recordings, Inc.*,
  522 F. Supp. 2d 1265 (S.D. Cal. 2007)....................................9, 10, 12, 17

*Viacom Int'l, Inc. v. YouTube, Inc.*,
  676 F.3d 19 (2d Cir. 2012)................................................................19

## STATUTES

17 U.S.C. § 512(a) ................................................................5, 7, 12, 18

28 U.S.C. § 2201................................................................7

## OTHER SOURCES

*Windstream Communications Internet Acceptable Use Policy*,
  https://www.windstream.com/About-Us/Acceptable-Use-Policy/ (last visited Oct. 4,
  2016) ................................................................3

## <u>INTRODUCTION</u>

This litigation is an abuse of the Declaratory Judgment Act in which Plaintiff Windstream Services, LLC ("Windstream") seeks a sweeping judgment immunizing itself against secondary copyright liability without reference to any specific copyrights, instances of infringement, or other facts on which liability actually depends. Windstream's declaratory judgment complaint ("the Complaint") contains no specific factual matter from which the Court can determine that it is not liable for infringement and runs afoul of the law governing internet service provider (ISP) liability for copyright infringement.

Windstream seeks a declaration that it is not liable for its subscribers' infringement of copyrights owned by Defendant BMG Rights Management (US) LLC ("BMG")—and by extension all copyrights—because it is a conduit internet service provider. But conduit ISPs enjoy no such blanket immunity from secondary liability for copyright infringement. Instead, ISPs' liability turns on a fact-specific inquiry into their knowledge of and contribution to infringement, their ability to supervise and control that infringement, the financial benefit that they obtain by permitting their subscribers' to use their network to infringe, and their termination of repeat infringers in appropriate circumstances.

Windstream's generalized allegations of non-liability thus cannot support its request for a far-reaching declaration of non-liability. Its Complaint is completely divorced from any specific copyrights or concrete instances of infringement for which the Court might issue a declaratory judgment that provides Windstream with meaningful and conclusive relief. In particular, Windstream is not entitled to a declaration that it has not contributed to future instances of infringement when its liability depends on facts that are unknown and unknowable in advance.

Windstream's attempt to sidestep this difficulty by alleging that conduit ISPs are immune to secondary liability for copyright infringement fails as a matter of law. Long-standing

doctrines of secondary liability make ISPs liable for infringement if they know of and contribute to that infringement or if they obtain a direct financial benefit from that infringement while failing to exercise a right to supervise or control it.  Congress granted conduit ISPs such as Windstream a "safe harbor" defense to this liability only if they terminate repeat infringers in appropriate circumstances.  Windstream's Complaint contains no specific facts from which the Court can infer that it is not liable for infringement, and its bald assertion that it has blanket immunity is legally invalid.

As a matter of law and certainly within the Court's discretion, Windstream's Complaint against BMG and Defendant Rightscorp, Inc. ("Rightscorp") should be dismissed as unripe and for failure to state a claim.

Further, Rightscorp should be dismissed from the case because it neither owns nor administers any copyrights, would have no standing or basis to bring any kind of infringement action against Windstream, and has never asserted or suggested that it has a copyright infringement claim against Windstream.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

BMG owns, administers, and licenses copyrights in musical compositions.  Compl. ¶ 23. In recent years, an online file-sharing protocol known as BitTorrent has become a primary channel for theft of copyrighted music and film.  BitTorrent allows internet users to share files directly between their computers, without the need for a middleman or centralized database. Compl. ¶¶ 25–26; *see also Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1026-1028

---

[1] Counsel for BMG was retained as counsel for Rightscorp after the Court granted BMG leave to file this motion to dismiss.  Before retaining counsel, Rightscorp contacted counsel for Windstream on its own in an effort to secure dismissal given that Rightscorp owns no copyrights and is therefore not a proper party to this declaratory judgment action.  Windstream refused to dismiss Rightscorp.

(9th Cir. 2013) (describing how BitTorrent works); *see also BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, Civil Action No. 1:14-cv-1611, 2016 WL 4224964, at *1–2 (E.D. Va. Aug. 8, 2016); *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 639 (E.D. Va. 2015). Those users are direct infringers of the copyrights in the content that they share.

BitTorrent users can be identified on the internet by their IP address, a unique string of numbers that is assigned by their ISP. Only the ISP knows the identity of the subscriber at a particular IP address.

Like many copyright holders, BMG sends through an agent infringement notices to ISPs to notify them that their users are infringing copyright and to ask them to notify the infringing subscribers and put a stop to the infringement. Due to the enormous volume of online infringement, copyright holders and their agents send millions of infringement notices to ISPs such as Windstream. BMG retained Rightscorp to monitor its copyrights online and notify ISPs of their infringement. Rightscorp's software automatically generates and transmits notices of infringement by a particular user to the user's ISP. Rightscorp monitors infringement and sends notices to many ISPs on behalf of many copyright holders. Compl. ¶¶ 27–28.

Windstream provides its subscribers with access to the internet. Before they access the internet, Windstream subscribers must agree to adhere to an Acceptable Use Policy and Terms and Conditions which forbid infringement of copyright. Compl. ¶ 16. Windstream's website directs copyright owners to send notices of infringement to a dedicated electronic mailbox, abuse@windstream.net. *See Windstream Communications Internet Acceptable Use Policy*, https://www.windstream.com/About-Us/Acceptable-Use-Policy/ (last visited Oct. 4, 2016).

BMG and its agent, Rightscorp, sent many notices to Windstream regarding infringement by its subscribers but did not observe any impact on infringement. Windstream's Complaint

acknowledges that, since at least 2011, it has received notices that "demand that Windstream take action against Windstream subscribers who allegedly infringed upon BMG's copyrights." Compl. ¶¶ 29–30.  Yet, the same repeat infringers (identified by their IP addresses) have continued to infringe with apparent impunity even after Windstream was notified of the infringement.

Shortly after BMG obtained a $25 million judgment against Cox Communications, another conduit ISP, for willful contributory copyright infringement, Windstream reached out to Rightscorp regarding infringement of BMG's works, among others, on Windstream's network. Declaration of Michael J. Allan (Allan Decl.) ¶ 3.  Rightscorp advised counsel for BMG of Windstream's inquiry, and BMG's counsel, responding to Windstream's inquiry, wrote to Windstream on April 1, 2016 requesting a time to speak.  Allan Decl. ¶ 4.

On May 24, 2016, in-house and outside counsel for BMG had a telephone call with in-house counsel at Windstream.  Litigation was not threatened or even discussed at all during the call.  Allan Decl. ¶ 5.  Windstream requested that BMG provide in writing the framework for a proposed business arrangement between the parties, and BMG complied with that request.  Allan Decl. ¶¶ 6–7.  BMG and Windstream had agreed to another phone call to continue the discussions, but no additional phone calls took place.  Allan Decl. ¶ 8.  Windstream instead filed this declaratory judgment action against BMG.  Windstream has not filed suit against any of the other Rightscorp clients or other copyright holders that provide notice of infringement.  Allan Decl. ¶ 9.

Windstream's Complaint seeks a declaration that it is not liable for any past, current, or future infringement of BMG's copyrights by its subscribers because it is a conduit internet service provider.  The Complaint provides no details regarding Windstream's handling of

infringement notices, the actions it takes against infringing subscribers, or its policies and procedures for addressing copyright infringement by its subscribers.  Instead, Windstream asks the Court to rule that it cannot be liable for any form of direct or secondary copyright infringement because it is "a mere conduit for the transmission of Internet services."  Compl. ¶ 45(a)–(d).  It also seeks a declaration that BMG is not entitled to any compensation or damages from Windstream for any alleged infringement of BMG's copyrights.  Compl. ¶ 45(k).

In addition to these declarations regarding its legal liability, Windstream seeks a series of declarations regarding specific facts that relate to its liability for infringement.  Windstream requests a ruling that it "never had actual knowledge of any copyright infringement of BMG's copyrights by Windstream's subscribers," and, further, that the notices sent by Rightscorp "do not provide Windstream with actual knowledge" of any infringement by its subscribers.  Compl. ¶ 45(h)–(i).  Similarly, Windstream asks the Court to rule that it has never "willfully" violated the Copyright Act "or other laws."  Compl. ¶ 45(j).

Finally, Windstream seeks a declaratory judgment that it has a DMCA "safe harbor" defense.  Compl. ¶ 45(e)–(g).  Windstream asks the Court to rule that "as a mere conduit for the transmission of Internet services, [it] qualifies for the safe harbor provision under 17 U.S.C. § 512(a) and is, therefore, not subject to the take-down notice provisions of the DMCA, including any Notices issued by Defendants."  Compl. ¶ 45(e).

## ARGUMENT

### I.   THE LAW GOVERNING CONDUIT ISP LIABILITY FOR SECONDARY COPYRIGHT INFRINGEMENT

Long-standing doctrines of "secondary" liability allow a copyright holder to sue not only those who commit infringement themselves (known as "direct" infringers) but also those who contribute to or profit from that infringement.  "Recognizing the impracticability or futility of a

copyright owner's suing a multitude of individual infringers, . . . the law allows a copyright holder to sue a contributor to the infringement instead." *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003) (noting that "chasing individual consumers is time consuming and is a teaspoon solution to an ocean problem" (citation omitted)).  "When a widely shared service or product is used to commit infringement, it may be impossible to enforce rights in the protected work effectively against all direct infringers, the only practical alternative being . . . secondary liability on a theory of contributory or vicarious infringement." *MGM Studios Inc. v. Grokster*, 545 U.S. 913, 930–31 (2005).

There are two main doctrines of secondary copyright liability.  First, "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Gershwin Publ'g Corp. v. Columbia Artists Mgmt. Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) (footnote omitted); *see also Grokster*, 545 U.S. at 930 (endorsing *Gershwin's* "doctrines of secondary liability" as "well established in the law" and applying them in the online context).  Second, one "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Grokster*, 545 U.S. at 930; *see also Gershwin*, 443 F.2d at 1162 ("[O]ne may be vicariously liable if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.").

Recognizing the risk that these doctrines pose to companies such as Windstream, Congress provided a "safe harbor" defense to secondary liability in the Digital Millennium Copyright Act ("DMCA").  *See* 17 U.S.C. § 512(a).  However, this defense is not absolute. Rather than provide conduit ISPs with blanket immunity, Congress required that conduit ISPs

adopt and reasonably implement a policy for the termination of repeat infringers in appropriate circumstances before they may claim a safe harbor defense. *See id.* § 512(i).

Applying these doctrines, the Eastern District of Virginia recently held Cox Communications liable for its subscribers' infringement of BMG's copyrights. *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634 (E.D. Va. 2015) (summary judgment); *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. 1:14-cv-1611, 2016 WL 4224964 (E.D. Va. Aug. 8, 2016) (post-trial motions).

## II.   WINDSTREAM FAILS TO ESTABLISH AN "ACTUAL CONTROVERSY" THAT WOULD GIVE THIS COURT JURISDICTION OVER ITS DECLARATORY JUDGMENT COMPLAINT

Windstream's Complaint seeks a far-reaching declaration of non-liability for an indeterminate period based on events that have yet to occur.  This failure to plead an "actual controversy" divests the Court of subject-matter jurisdiction.

### A.   Legal Standard

Jurisdiction under the Declaratory Judgment Act is limited to those cases that involve an "actual controversy."  28 U.S.C. § 2201.  The "actual controversy" requirement is coextensive with Article III's "case or controversy" requirement for justiciable claims.  *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40 (1937).  Thus, a dispute giving rise to the claim for declaratory relief must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna*, 300 U.S. at 240–41).

"This requirement circumscribes federal jurisdiction to real conflicts so as to preclude the courts from gratuitously rendering advisory opinions with regard to events in dispute that have not matured to a point sufficiently concrete to demand immediate adjudication and thus that may never materialize as actual controversies." *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 406 (S.D.N.Y. 2002), *aff'd* 346 F.3d 357 (2d Cir. 2003).  There is no "precise" test; instead, courts assess justiciability on a case-by-case basis.  *Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.*, 90 F.3d 671, 675 (2d Cir. 1996).

Failure to establish an actual controversy prevents a court from exercising jurisdiction over a declaratory judgment complaint.  "A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).   The plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists.  *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002).  When determining the extent of its jurisdiction under Rule 12(b)(1), a court may consider evidence outside the pleadings.  *Makarova*, 201 F.3d at 113.

### B.    Windstream's Complaint Does Not Present an Actual Controversy

Here, Windstream fails to allege an actual controversy that would support exercising jurisdiction over its declaratory judgment complaint.  Without identifying a single copyright or alleged instance of infringement, describing its handling of a single infringement notice, or identifying a single terminated repeat infringer, Windstream requests a sweeping declaratory judgment that would immunize it from liability for all infringement on its network.  This request for a vague, far-reaching ruling divorced from any specific facts is not the proper subject of a declaratory judgment action.

Courts have refused to exercise jurisdiction over functionally identical claims for declaratory relief.  The Southern District of California dismissed an action for declaratory relief brought by an online service provider that similarly failed to identify any copyrights and was similarly untied to any particular instances of alleged infringement.  *See Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1268 (S.D. Cal. 2007).  Like Windstream, the plaintiff in *Veoh* "generally discusse[d] their [business] operation" and that the defendant "owns unspecified copyrights," and sought, based on those "general allegations," "a far-reaching declaratory judgment that it is not liable for infringing any of Defendant's rights and is entitled to the [DMCA] safe harbor."  *Id.* at 1269.  The court dismissed Veoh's complaint, finding that the "nature and extent of the controversy has not been adequately defined to support federal jurisdiction."  *Id.*

As the Southern District of California recognized, the failure to identify specific copyrights and instances of infringement meant that the suit was not "capable of specific relief through a decree of conclusive character" but instead sought a "blanket validation of the ongoing legality of the[] [plaintiff']s business model."  *Id.* at 1269–70; *see also Applera Corp. v. Mich. Diagnostics, LLC*, 594 F. Supp. 2d 150, 160 (D. Mass. 2009) (dismissing a claim for a judgment that the plaintiff did not infringe fifty-five of the defendants' patents where there was "no 'definite and concrete' dispute as to particular patents" and the other side had made no "particularized suggestion of infringement").  That is exactly what Windstream asks for here— blanket validation of its business model "divorced from a particular dispute over specific rights." *Veoh*, 522 F. Supp. 2d at 1270.  Windstream asks the court to declare that it cannot be liable for secondary copyright infringement, regardless of any specifics about the copyrights and

infringements at issue, the notice it has received, or the actions it has taken with regard to infringement.

The "actual controversy" requirement is designed to avoid this very kind of advisory opinion.  As in *Veoh*, Windstream's Complaint would have the Court make declarations "as equally applicable against Defendant as to any other copyright holder"—the "declaration's effect on each one of Defendant['s] [] copyrights would be uncertain enough; the effect on all other copyright holders not before the Court would be even more nebulous." *Id.* at 1270; *accord Broadcom Corp. v. Qualcomm Inc.*, No. 08-cv-1829 WQH (LSP), 2009 WL 684835, at \*6 (S.D. Cal. Mar. 12, 2009) (complaint failed to set forth an actual controversy where it sought a "far-reaching declaratory judgment premised on a finding that Qualcomm's unidentified patents that are embodied in wireless chipsets and handsets are exhausted" but failed to identify a single patent that was allegedly exhausted).

Whether an ISP is secondarily liable for copyright infringement and whether it has a safe harbor defense are "fact-intensive inquiries." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1177 (9th Cir. 2007); *see also BMG*, 149 F. Supp. 3d at 671–73 (denying summary judgment on the issue of an ISP's willful blindness where a jury could draw competing inferences from the ISP's decision to block notices sent by Rightscorp on behalf of BMG and on the question of whether a conduit ISP has a direct financial interest in its subscribers' infringement).  A jury must decide many things including whether Windstream had knowledge of the infringement by its subscribers; whether Windstream caused, induced, or materially contributed to that infringement; whether Windstream had the ability to control that infringement; whether Windstream profited from that infringement; and whether Windstream terminated repeat infringers in appropriate circumstances as required under the DMCA's safe

harbor provision.  *See BMG*, 149 F. Supp. 3d at 655–62, 671–73, 675–76.  Yet, Windstream

seeks a ruling completely divorced from the specific facts of its subscribers' past or future

infringement, its knowledge and acts with regard to its subscribers' infringement, and the extent

to which it benefited from its subscribers' infringement.

Indeed, Windstream seeks a declaratory judgment with prospective and ongoing effect as

to future infringements on its network.  But the facts on which Windstream's future liability

turns cannot possibly be known in advance.  The Court cannot possibly know whether

Windstream will have knowledge of future infringements, what its future practices will be, and

whether it will terminate repeat infringers in appropriate circumstances.  These sorts of

contingencies render questions of infringement far too remote to justify declaratory relief.  *See,*

*e.g.*, *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it

rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at

all.'" (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)));

*Bruce Winston Gem Corp. v. Harry Winston, Inc.*, No. 09 Civ. 7352 (JGK), 2010 WL 3629592,

at *6 (S.D.N.Y. Sept. 16, 2010) (dismissing declaratory-judgment action that "would necessarily

entail advisory opinions into how far the plaintiffs can go in [their] future activities without

infringing on the defendants' marks"); *Farmaceutisk Laboratorium Ferring A/S v. Solvay*

*Pharms.*, No. 1:89-CV-1972-JOF, 1992 WL 421542, at *9 (N.D. Ga. Sept. 9, 1992) (holding that

the issue of infringement by a new prescription drug was "too remote" because the court "cannot

be guaranteed that the product in question will not change between now and the time Solvay files

an NDA or ultimately receives FDA approval to market its drug").  As the *Veoh* court observed,

"given the highly factual and time-sensitive findings required to satisfy [the safe harbor], would

today's declaratory relief essentially give Plaintiff a 'free pass' to infringe rights in the future?" *Veoh*, 522 F. Supp. 2d at 1270 n.3.

While Windstream may desire to immunize itself against liability for future infringement through the DMCA safe harbor for "conduit" ISPs, there is no factual record on which to assess that liability.   To be eligible for the DMCA safe harbor, a conduit ISP must have "adopted and reasonably implemented, and inform[ed] subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of . . . repeat infringers." 17 U.S.C. § 512(a), (i)(1)(A).   Windstream provides no factual basis on which this Court could rule that Windstream currently has a policy of terminating repeat infringers—much less that it will have such a policy in the future. *See* Compl. ¶ 16 (explaining that users must agree to Windstream's Acceptable Use Policy and Terms and Conditions and explaining that the Policy and Terms "constitute Windstream's policy for addressing copyright infringers, including repeat infringers, and are reasonably enforced by Windstream").  Because it is impossible to know today whether Windstream will terminate repeat infringers in appropriate circumstances tomorrow, this Court cannot offer Windstream the "decree of a conclusive character" premised on non-hypothetical facts that is the touchstone for a proper declaratory judgment action. *MedImmune*, 549 U.S. at 127; *see also Mears v. Montgomery*, No. 02 Civ. 407 (MHD), 2013 WL 69221, at *2 (S.D.N.Y. Jan. 4, 2013) ("Accordingly, '[f]or a declaratory judgment to issue, there must be a dispute which calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'" (citations omitted)), *aff'd* 566 F. App'x 17 (2d Cir. 2014).  It would be extraordinarily unfair to immunize Windstream against the infringement of BMG's copyrights without regard for the facts.

That leaves prior instances of infringement, but declaratory judgment actions are not the proper vehicle to resolve questions of liability and damages for already accrued harms.  *See Dow Jones*, 237 F. Supp. 2d at 426 ("[W]here the purported use of the DJA seeks a declaration of non-liability to preemptively defeat actions grounded on tort claims involving rights already accrued by reason of alleged wrongful conduct, various courts have held that that application is not a warranted purpose of the DJA."); *Nat'l Union Fire Ins. Co. v. Int'l Wire Grp., Inc.*, 02-cv-10338 (SAS), 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003) ("[The Act] is intended to operate prospectively.").  Backward-looking declaratory judgments do not provide the parties with any clarity or relief looking forward but simply deny the natural plaintiff its choice of forum.

Windstream's allegations differ significantly from the types of intellectual property disputes in which a court can offer useful and conclusive forward-looking relief.  Those generally involve a concrete dispute over specifically identifiable legal rights—for example, the scope of a patent or a license or the extent of an owner's rights in particular creative work.  *See, e.g.*, *Medimmune*, 549 U.S. at 128 (noting that "[t]he factual and legal dimensions of the dispute are well defined" where the parties had a licensing agreement but the petitioner asserted it did not owe royalties because the patent at issue was invalid and not infringed); *Effie Film, LLC v. Murphy*, 932 F. Supp. 2d 538, 554–56 (S.D.N.Y. 2013) (exercising jurisdiction over a complaint that sought a declaratory judgment of non-infringement by a yet-to-be-completed film, but only to the extent that the completed film proved faithful to the shooting script supplied to the court); *Klinger v. Conan Doyle Estate, Ltd.*, 988 F. Supp. 2d 879, 886–87 (N.D. Ill. 2013) (holding that a declaratory judgment complaint involved an actual controversy where it sought a ruling regarding the public's right to use particular "elements" from the Sherlock Holmes canon and the

plaintiffs in fact wished to publish a derivative work that incorporated those elements without obtaining a license from the estate of Arthur Conan Doyle); *Telebrands Corp. v. Exceptional Prods. Inc.*, No. 11-cv-2252, 2011 WL 6029402, at *2 (D.N.J. Dec. 5, 2011) (holding that there was an actual controversy between two companies that marketed competing oral hygiene products for pets where, among other things, the parties had "potentially conflicting claims to certain, articulated intellectual properties").

By contrast, Windstream is reduced to making assertions and asking for declaratory judgments about the state of the evidence available to BMG and to the Court. *See, e.g.*, Compl. ¶ 36 ("Defendants have no direct evidence that any Windstream subscriber engaged in direct copyright infringement."). That is not the proper subject of a declaratory judgment complaint.

## III.   THE COURT SHOULD EXERCISE ITS DISCRETION NOT TO HEAR WINDSTREAM'S DECLARATORY JUDGMENT COMPLAINT

Even if the Court were to find that it has subject matter jurisdiction, it should exercise its discretion to dismiss this action. *See Dow Jones & Co. v. Harrods*, 346 F.3d 357, 359 (2d Cir. 2003) ("Courts have consistently interpreted th[e] permissive language [of the Declaratory Judgment Act] as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear."). Several factors are relevant to this exercise of discretion:

> [i] whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; . . . [ii] whether a judgment would finalize the controversy and offer relief from uncertainty; . . . [iii] whether the proposed remedy is being used merely for "procedural fencing" or a "race to res judicata"; [iv] whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and [v] whether there is a better or more effective remedy.

*Id.* at 359–60.

As described above, Windstream seeks a sweeping ruling that is completely divorced from changes in its future conduct or that of its subscribers—and from technological changes that may alter its relationship with its subscribers.  Ruling on the matters raised in Windstream's Complaint will not finalize the controversy between the parties, because Windstream's future liability turns, among other things, on whether it terminates subscribers who repeatedly infringe BMG's copyrights going forward; Windstream's knowledge of infringement on its network; Windstream's contribution to the infringement by its subscribers; Windstream's ability to control its subscribers' continuing infringement; and Windstream's benefit from its subscribers' infringing activity on its network.  *See Rolex Watch U.S.A. Inc. v. PRL USA Holdings, Inc.*, No. 12 Civ. 6006, 2015 WL 1909837, at *4 (S.D.N.Y. Apr. 27, 2015) (exercising jurisdiction to dismiss action for declaratory relief in a trademark dispute where "[a]ny declaratory judgment would risk making false assumptions about [the declaratory judgment plaintiff's] eventual course of action in commercializing the disputed products"); *Bruce Winston Gem Corp. v. Harry Winston, Inc.*, No. 09 Civ. 7352 (JGK), 2010 WL 3629592, at *6 (S.D.N.Y. Sept. 16, 2010) (explaining that discretionary factors justified dismissing action seeking declaration of non-infringement with respect to future conduct because such a judgment would be "too abstract to serve a useful purpose and is unlikely to end uncertainty and controversy between the parties").

Courts have exercised their discretion to dismiss actions that will not serve the Declaratory Judgment Act's purpose of eliminating uncertainty between the parties.  *See, e.g.*, *United States v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986) ("[T]he fundamental purpose of the [Declaratory Judgment Act] is to 'avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to

begin suit, after damage has accrued.'" (quoting *Luckenbach Steamship Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963))); *Cunningham Brothers, Inc. v. Bail*, 407 F.2d 1165, 1167–68 (7th Cir. 1969).  Such decisions recognize that, where the offending conduct has already occurred, allowing a prospective defendant to obtain a declaration of non-liability "could effectively deny an allegedly injured party its otherwise legitimate choice of the forum and time for suit."  *BASF Corp. v. Symington*, 50 F.3d 555, 559 (8th Cir. 1995).

The only purpose of Windstream's suit is to pre-empt good faith negotiations between the parties and deprive BMG of its choice of forum.  Rather than continue to respond to BMG's latest proposal in a dialogue that Windstream itself initiated, Windstream short-circuited BMG's attempts to negotiate in good faith and initiated litigation in its preferred venue.  *See Dow Jones*, 663 F.3d at 95–96 (explaining that whether an action appears to be "procedural fencing" weighs against exercising jurisdiction); *Nat'l Union Fire Ins.*, 2003 WL 21277114, at *6 ("Courts in the Second Circuit have repeatedly refused to exercise jurisdiction over declaratory actions motivated by a desire to wrest the choice of forum from the real plaintiff."); *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 586 (S.D.N.Y. 1990) ("[T]he misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action."). Windstream's generalized allegations and the timing of its decision to file the Complaint both suggest that Windstream filed this action to secure strategic advantages in any dispute with BMG.

Windstream's allegations make clear that it is more concerned with anticipating defenses to liability than seeking a ruling that will clarify and guide the parties' conduct going forward. *See Veoh*, 522 F. Supp. 2d at 1271 ("[U]sing the Declaratory Judgment Act to anticipate an

affirmative defense is not ordinarily proper, and numerous courts have refused to grant

declaratory relief to a party who has come to court only to assert an anticipatory defense.").

Here, Windstream asks the Court to rule that it is entitled to the DMCA safe harbor and that its

status as a conduit ISP immunizes it against infringement liability.  These assertions, taken out of

the context of a proper suit for infringement, present "particular problems" because the requested

relief "would seemingly insulate Plaintiff's business model against all infringement claims, from

every copyright holder, for all time."  *Id.*

## IV.    WINDSTREAM'S COMPLAINT FAILS TO STATE A CLAIM

Windstream also fails to state claims that it is not liable for contributory or vicarious

infringement of BMG's copyrights and that it is entitled to the DMCA safe harbor for conduit

ISPs.

### A.    Legal Standard

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712

F.3d 705, 717 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A pleading

that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action

will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007)).  Dismissal under Rule 12(b)(6) is proper when a complaint's factual allegations are not

substantial enough "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at

555.

**B.** **Windstream Fails to State Claims of Non-Infringement of BMG's Copyrights and Entitlement to the DMCA Safe Harbor**

The gravamen of Windstream's allegations is that conduit internet service providers cannot be liable for secondary copyright infringement. *See* Compl. ¶36 ("Windstream, as a mere conduit for the transmission of Internet services, cannot be held liable for direct copyright infringement."); Compl. ¶ 37 ("Also, as a mere conduit for the transmission of Internet services, Windstream cannot be liable for contributory infringement, vicarious infringement, and/or inducement of copyright infringement."); Compl. ¶ 41 ("[A]s a mere conduit for the transmission of Internet services, [Windstream] qualifies for the safe harbor provision under 17 U.S.C. § 512(a)."). That is simply not the law. In the DMCA, Congress did not give conduit internet service providers blanket immunity, but rather a "safe harbor" defense to secondary copyright liability under certain conditions. For conduit internet service providers, the principal requirement is that they adopt and reasonably implement a policy for the termination of repeat infringers in appropriate circumstances. *See* 17 U.S.C. § 512(a), (i); *BMG*, 149 F. Supp. 3d at 653–62. Windstream makes no allegation that it has done so.

Absent a DMCA safe harbor, long-standing doctrines of secondary liability—legislating against the background of which, Congress gave conduit service providers a limited defense in the DMCA—make Windstream liable for infringement if it "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct" (contributory infringement) or if it "has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities" (vicarious liability). *Gershwin Publ'g v. Columbia Artists Mgmt.*, 443 F.2d 1159, 1162 (2d Cir. 1971); *see also MGM Studios Inc. v. Grokster*, 545 U.S. 913, 930 (2005). These doctrines of secondary liability apply equally to conduit ISPs. *BMG*, 2016 WL 4224964, at *9–14 (holding that there was "sufficient evidence for a reasonable

jury to hold [the defendant ISP] responsible for the infringement of BMG's copyrights on its network"); *BMG*, 149 F. Supp. 3d at 670–76 (holding that conduit ISPs may be contributorily or vicariously liable for their subscribers' infringement).

As the *BMG v. Cox* court recognized, conduit ISPs may have knowledge of infringement based on notices from copyright holders and may be found willfully blind if they delete them. *See id.* at 671–73 (holding that a jury could find that an ISP's receipt of notice of infringement and willful blindness to infringement established its knowledge of infringing activity by subscribers); *see also Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012) (explaining that the "willful blindness doctrine may be applied . . . to demonstrate knowledge or awareness of specific instances of infringement"). Conduit ISPs can make a material contribution to their subscribers' infringement because, among other things, their network provides the site and facilities for that infringement. *See BMG*, 2016 WL 4224964, at *14 ("There can be no question that the provision of high-speed internet service materially contributes to infringement via BitTorrent."). Conduit ISPs have the right and ability to control their subscribers' infringement because they have the power to deprive them of access to the network. *See BMG*, 149 F. Supp. 3d at 675 (holding that Cox had both the legal and practical ability to stop or limit infringement by its subscribers by suspending or terminating their accounts); *see also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) ("The ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise."); *Capitol Records, LLC v Escape Media Grp., Inc.*, No. 12-CV-6646 (AJN), 2015 WL 1402049, at *42 (S.D.N.Y. Mar. 25, 2015) (holding that a secondary infringer has the right to control where secondary infringer has the contractual right to "terminate accounts" and "revoke [access] privileges"); *Arista Records LLC v. Lime Grp.*

*LLC*, 784 F. Supp. 2d 398, 435 (S.D.N.Y. 2011) (explaining that an entity's "right and ability to limit the use of its product for infringing purposes" by "denying access" supports vicarious liability); *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 157 (S.D.N.Y. 2009) (holding that a right "to terminate, suspend or restrict users' subscriptions, thereby limiting their access to uploading or downloading" constitutes control).  And ISPs benefit from infringement where "the availability of infringing material 'acts as a "draw" for customers.'"  *Napster*, 239 F.3d at 1023 (citations omitted); *see also BMG*, 149 F. Supp. 3d at 675–76.

Windstream makes no attempt to address any of these factual questions on which its liability for infringement depends.  The Complaint contains none of the detailed "factual matter" relating to Windstream's knowledge or handling of infringement notices, the competitive benefits of its tolerance of infringement on its network, or its termination of repeat infringers that would give a factfinder "plausible grounds to infer" that Windstream is not secondarily liable for infringement by its subscribers.  *See Twombly*, 550 U.S. at 555–56.  Instead, Windstream simply recites the elements of the causes of action for contributory and vicarious copyright infringement and asserts that they are not met.  Without pleading any specific facts about its practices for handling notices of infringement and acting against infringing subscribers, Windstream alleges that it "does not have knowledge of any of the alleged infringements," that it "lacks the ability to exert control" over its subscribers' infringement, that it "does not authorize, direct or encourage its subscribers to engage in copyright infringement," and that it "it qualifies for the safe harbor provision."  Compl. ¶¶ 38–41.  This sort of "formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

## V.   RIGHTSCORP SHOULD BE DISMISSED

Even apart from the overall problems with Windstream's Complaint, there is absolutely no basis for it to sue Rightscorp, which does not own or administer any copyrights, could not sue for their infringement, and has never asserted any right to sue Windstream for copyright infringement.  A declaratory judgment against Rightscorp would have no impact on Windstream's rights vis-à-vis the actual owners of the copyrights at issue and thus would be completely ineffective to provide Windstream with any actual relief or redress any of its alleged injuries.  There is no basis to seek a declaration of non-infringement against a party that neither owns nor could enforce the rights in question.  *See Microchip Tech. Inc. v. Chamberlain Grp., Inc.*, 441 F.3d 936, 942–43 (Fed. Cir. 2006) ("The concepts of 'adverse legal rights' and 'legal risk' used . . . to describe the standard for jurisdiction [over a declaratory judgment action] require that there be an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff has preempted it."); *see also Arbitron, Inc. v. Kiefl*, No. 09-cv-04013 PAC, 2010 WL 3239414, at *3 (S.D.N.Y. Aug. 13, 2010) (holding that there was no "actual controversy" regarding the ownership of certain patents where the declaratory judgment defendant had waived his claim to invention and therefore had no legal right to challenge the patent holder's title); *Arista Records, LLP v. Lime Grp., LLP*, 784 F. Supp. 2d 398, 435 (S.D.N.Y. 2011) (explaining that an affirmative claim of copyright infringement requires proof of ownership of the underlying copyright).  Windstream had no good faith basis to include Rightscorp in this complaint, and Rightscorp should be dismissed entirely.

## <u>CONCLUSION</u>

For the foregoing reasons, Windstream's Complaint should be dismissed.


Dated: New York, New York
       October 4, 2016

Respectfully submitted,

/s/ Michael J. Allan
Michael J. Allan
Jeffrey M. Theodore (admitted *pro hac vice* as to
    Defendant BMG Rights Management (US)
    LLC; application to appear *pro hac vice* on
    behalf of Defendant Rightscorp, Inc. to be
    submitted)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036
Tel: (202) 429-3000
Email: mallan@steptoe.com

Evan Glassman
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 506-3900
Email: eglassman@steptoe.com

*Counsel for Defendants*